IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 24-10633

---

## UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE,*

V.

## JAMAION WILSON,
*DEFENDANT-APPELLANT.*

---

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

## APPELLANT'S INITIAL BRIEF

> JASON D. HAWKINS
> FEDERAL PUBLIC DEFENDER
>
> KEVIN JOEL PAGE
> ASSISTANT FEDERAL PUBLIC DEFENDER
> 525 South Griffin
> Suite 629
> Dallas, Texas 75202
> (214) 767-2746
>
> *Counsel for Mr. Wilson*

**Certificate of Interested Persons for**
*United States v. Jamaion Wilson,* Case No. 24-10633

The undersigned certifies that the following persons have an interest in this case, to help the judges evaluate possible grounds for disqualification or recusal.

| | |
|---|---|
| Appellant: | Jamaion Wilson |
| Federal Public Defender: | Jason Hawkins |
| Assistant Federal Public Defenders: | John J. Stickney (Trial)<br>Kevin Joel Page (Appeal) |
| United States Attorney: | Leigha Simonton |
| Assistant United States Attorneys: | Frank L. Gatto (Trial)<br>Stephen Gilstrap (Appeal) |
| Magistrate Judge: | Hon. Hal. R. Ray |
| District Judge: | Hon. Mark Pittman |

/s/ Kevin Joel Page
Counsel for Appellant

**Statement Regarding Oral Argument**

Oral argument may be helpful to address the second and third prongs of plain error review on a sentencing claim. In the context of a preserved Second Amendment challenge, it may also be helpful to consider the binding force of a prior precedent, *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), whose statistical rationale has been overtaken by changed circumstance.

# Table of Contents

Certificate of Interested Persons...............................................................i

Statement Regarding Oral Argument ..................................................ii

Table of Authorities ........................................................................ iv

Jurisdictional Statement .................................................................1

Issues Presented for Review ...........................................................2

Facts ...........................................................................................3

Proceedings Below............................................................................3

Summary of the Argument...............................................................6

Argument ......................................................................................8

      I.     The district court plainly erred in applying a cross-reference to the second-degree murder Guideline. The PSR's factual recitation supported a cross-reference to the voluntary manslaughter Guideline. ....8

      II.    The district court erred in entering conviction for a violation of 18 U.S.C. §922(o), which statute violates the Second Amendment as applied to the possession of machineguns..........20

Conclusion.....................................................................................26

Certificate of Service.........................................................................27

Certificate of Compliance ...............................................................27

# Table of Authorities

**Federal Cases**

*Bays v. United States,*
No. 3:13-CR-00357-B-1, 2024 WL 102930 (N.D. Tex. Jan. 9, 2024) .................. 18

*Bays v. United States,*
No. 3:13-CR-357-B-1, 2023 WL 9183713 (N.D. Tex. Dec. 20, 2023) ................. 17

*Class v. United States,*
583 U.S. 174 (2018) ......................................................................... 21

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................21, 24, 25

*Frascarelli v. United States Parole Comm'n,*
857 F.3d 701 (5th Cir. 2017) ............................................................... 11

*Freeman v. United States,*
564 U.S. 522 (2011) ......................................................................... 19

*Gall v. United States,*
552 U.S. 38 (2007) ........................................................................... 19

*Hollis v. Lynch,*
827 F.3d 436 (5th Cir. 2016) ......................................................... *passim*

*Molina-Martinez v. United States,*
578 U.S. 189 (2016) ..................................................................... 13, 19

*New York State Rifle & Pistol Assoc. v. Bruen,*
597 U.S. 1 (2022) ....................................................................... 21, 26

*Peugh v. United States,*
569 U.S. 530 (2013) ......................................................................... 19

*Rosales-Mireles v. United States,*
585 U.S. 129 (2018) ..................................................................... 19, 20

*Stevenson v. United States,*
    162 U.S. 313 (1896) ........................................................ 10

*United State v. Olano,*
    507 U.S. 725 (1993) ......................................................... 8

*United States v. Bazemore,*
    608 F. App'x. 207 (5th Cir. 2015)(unpublished) .......................... 14, 15

*United States v. Branch,*
    91 F.3d 699 (5th Cir. 1996) ................................................ 9

*United States v. Bravo,*
    2021 WL 1561385 (5th Cir. Apr. 20, 2021)(unpublished) .................. 17

*United States v. Broce,*
    488 U.S. 563 (1989) ......................................................... 21

*United States v. Brown,*
    555 F.2d 407 (5th Cir. 1977) ................................................ 8

*United States v. Browner,*
    889 F.2d 549 (5th Cir. 1989) ..........................................9, 11, 12

*United States v. Cardenas,*
    598 F. App'x 264 (5th Cir. 2015)(unpublished) .......................... 15

*United States v. Castro-Alfonso,*
    841 F.3d 292 (5th Cir. 2016) ............................................... 14

*United States v. Collins,*
    690 F.2d 431 (5th Cir. 1982) ........................................... 10, 12

*United States v. Cotton,*
    535 U.S. 625 (2002) ......................................................... 20

*United States v. Diaz,*
    116 F.4th 458 (5th Cir. 2024) ...................................... 7, 20, 22, 23

*United States v. Dominguez-Benitez,*
    542 U.S. 74 (2004) ......................................................... 13

*United States v. Elk,*
    658 F.2d 644 (8th Cir. 1981) .................................................................. 10

*United States v. Garcia,*
    647 F. App'x. 408 (5th Cir. 2016)(unpublished) ................................. 14

*United States v. Garcia,*
    647 Fed. Appx. 408 (5th Cir. 2016)(unpublished ............................... 17

*United States v. Hott,*
    866 F.3d 618 (5th Cir. 2017) ................................................................. 17

*United States v. Kinzy,*
    2023 WL 4763336 (5th Cir. 2023)(unpublished) .......................... 14, 18

*United States v. Leal-Rax,*
    594 F. App'x 844 (5th Cir. 2014)(unpublished) ................................. 15

*United States v. Leontaritis,*
    977 F.3d 447 (5th Cir. 2020) ................................................................. 19

*United States v. Lopez,*
    923 F.2d 47 (5th Cir. 1991) ..................................................................... 8

*United States v. Martinez-Romero,*
    817 F.3d 917 (5th Cir. 2016) ............................................................ 14, 16

*United States v. Miller,*
    307 U.S. 174 (1939) ................................................................................ 24

*United States v. Montgomery,*
    634 F. App'x 127 (5th Cir. 2015)(unpublished) ................................. 17

*United States v. Nanda,*
    867 F.3d 522 (5th Cir. 2017) ................................................................. 19

*United States v. Perez-Macias,*
    335 F.3d 421 (5th Cir. 2003) ................................................................. 20

*United States v. Redmond,*
    965 F.3d 416 (5th Cir. 2020) ................................................................. 14

*United States v. Reyna-Aragon,*
992 F.3d 381 (5th Cir. 2021)...........................................14, 19

*United States v. Richardson,*
676 F.3d 491 (5th Cir. 2012)...........................................14, 19

*United States. v. Rico,*
864 F.3d 381 (5th Cir. 2017)...........................................14, 19

*United States v. Rico-Mejia,*
859 F.3d 318 (5th Cir. 2017)...............................................15

*United States v. Ritchie,*
117 F.4th 762 (5th Cir. September 2024)...............................14

*United States v. Tanksley,*
848 F.3d 347 (5th Cir. 2017)........................... 14, 15, 16, 17

*United States v. Tanksley,*
854 F.3d 284 (5th Cir. 2017)...............................................14

*United States v. Taylor,*
2022 WL 2752602 (5th Cir. 2022)(unpublished)...............14

*United States v. Thomas,*
793 F. App'x. 346 (5th Cir. 2020)(unpublished) .................14

*United States v. Vasquez-Tovar,*
420 F. App'x 383 (5th Cir. 2011)(unpublished)...................15

*United States v. Walters,*
No. 22-50774, 2024 WL 512555 (5th Cir. Feb. 9,
2024)(unpublished) ...............................................................14

**Federal Statutes**

18 U.S.C. § 922(g)(1)..................................................22, 23

18 U.S.C. § 922(o)............................................................*passim*

18 U.S.C. § 1111 ...................................................................10

18 U.S.C. § 1111(a) ................................................................ 4

18 U.S.C. § 1112 ........................................................... 6, 10, 11

18 U.S.C. § 3231 ................................................................... 1

18 U.S.C. § 3553 ................................................................. 17

18 U.S.C. § 3742 ................................................................... 1

28 U.S.C. § 1291 ................................................................... 1

An Act to Suppress the Use of Bowie Knives: § 2. (June 30, 1837) ......... 26

USSG Chapter 5A .............................................................. 6, 18

USSG § 2A1.2 .............................................................. *passim*

USSG § 2A1.3 ........................................................ 2, 6, 10, 18

USSG § 2K2.1 ................................................................... 4, 9

USSG § 2K2.1(c)(1)(B) ............................................................ 9

USSG § 3E1.1 .................................................................... 18

## State Statutes

Mass. Gen. Law (1850), chap. 194 §§ 1,2 ................................... 26

1771 N.J. Laws 346, An Act For The Preservation Of Deer And Other
    Game, And To Prevent Trespassing With Guns, § 10 ..................... 26

## Constitutional Provisions

U.S. Const. amend. II ................................................... *passim*

## Other Authorities

Alcohol, Tobacco, and Firearms, *Firearms Commerce in the United States,*
    *2021 Annual Statistical Update* ..................................... 7, 24

Alcohol, Tobacco, and Firearms, *Fiscal Year 2024, Congressional Budget*
    *Submission* ......................................................... 7, 25

Bureau of Alcohol, Tobacco, and Firearms, *Firearms Commerce in the United States, 2021 Annual Statistic Update*, p. 16 (2021)...................................7, 24

Bureau of Alcohol, Tobacco, and Firearms, *Fiscal Year 2024, Congressional Budget Submission*, at 14 (March 2023).........................................7, 25

Mark Frassetto, *Firearms and WeaponsLegislation up to the Early 20th Century* (January 15, 2013) ...................................................................................26

4 W. Blackstone, *Commentaries on the Laws of England* 148–149 (1769)...................24

## Jurisdictional Statement

The district court had original jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The District Court entered written judgment on July 15, 2024, (ROA.88), and Appellant filed a timely notice of appeal the same day, (ROA.93).

**Issues Presented for Review**

Whether the district court plainly erred in applying a cross-reference to USSG **§2A1.2**, the offense Guideline for second-degree murder, where its own factual findings effectively described a voluntary manslaughter, governed by USSG **§2A1.3**?

Where 18 U.S.C. **§922(o)** violates the Second Amendment?

## Statement of the Case

### I.    Facts

On May 9, 2023, Fort Worth Police Department officers arrived at a Valero gas station and found the body of a shooting victim. *See* (ROA.11). The man died upon arrival to the hospital. *See* (ROA.11).

Later, officers questioned Appellant Jamaion Wilson and secured an admission that he'd shot the victim. *See* (ROA.12). Specifically, Appellant said that he and two friends bought a gun from the victim at the Valero for $300, but that the gun turned out to be fake. *See* (ROA.12). Appellant said that his pistol had been unloaded at the time, so he retrieved an extended magazine from his own car upon discovering the fraud. *See* (ROA.12). He also admitted that he placed a device on his gun to make it fire more rapidly, and that he used it to shoot the victim in self-defense during a confrontation. *See* (ROA.12-13). Surveillance video showed the shooting; it appears to show that the victim possessed a firearm tucked under his arm at the moment of the shooting. *See* (Governments' Sentencing Exhibit 3); (ROA.237).

### II.    Proceedings Below

A grand jury indicted Appellant for unlawfully possessing a machinegun under 18 U.S.C. §922(o). *See* (ROA.12-13). Appellant moved to dismiss the indictment, asserting that §922(o) violated the Second Amendment both facially and as applied. *See*

(ROA.42-47). The court rejected the as-applied challenge because it believed that the defendant had used the firearm unlawfully. *See* (ROA.59). It rejected the facial challenge as foreclosed by *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016). *See* (ROA.60).

Appellant pleaded guilty, *see* (ROA.66-67), and the Probation Office prepared a Presentence Report (PSR), which calculated the Guidelines at 120 months imprisonment, the statutory maximum, *see* (ROA.210). According to the PSR, the Guidelines would have recommended 188-235 months imprisonment had the statutory maximum not capped the sentence at ten years. *See* (ROA.210). The PSR recommended so long a sentence because it applied a cross-reference from USSG §2K2.1, the usual offense Guideline governing firearms offense, to USSG §2A1.2, the offense Guideline governing second-degree murder. *See* (ROA.199). After reciting the content of 18 U.S.C. §1111(a), the murder statute, the PSR justified the cross-reference with the following statement:

> The firearm containing the Glock switch possessed by the defendant was used in the murder of D.J. on May 9, 2023. When determining the applicable guideline for the cross reference, **the details of D.J.'s murder indicates a "crime of passion" in which the defendant acted against D.J. because of a sudden strong impulse such as anger with minimal planning and within a short period of time**. The defendant was informed the firearm he had purchased from D.J. was not genuine. After being provided this information, the defendant walked back to his vehicle, loaded his firearm containing a Glock switch with an extended magazine, and confronted D.J. There is no evidence to support D.J. pointed his

firearm at the defendant or threatened the defendant's life. The defend-
ant then shot D.J. multiple times and fled from the scene. Thus, the base
offense level is 38.

(ROA.199)(PSR, ¶24)(emphasis added).

The defense objected to the cross-reference on the grounds that the record did

not exclude self-defense. *See* (ROA.215-216). The government responded in support of

the PSR and introduced two videos of the gas station at the time of the shooting. *See*

(ROA.233-240). It emphasized that the victim appeared to place a firearm under his

arm just before he was shot, and hence argued, among other things, that Appellant

lacked a reasonable fear for his life. *See* (ROA.238).

At the sentencing hearing, the court overruled the objection without argument.

*See* (ROA.163). It also expressly adopted the factual findings of the PSR. *See* (ROA.163,

243). Ultimately, the court imposed 120 months imprisonment, run concurrently to

the pending state charge for the same conduct. *See* (ROA.175-176). It stated that this

was:

the sentence determined after considering all the factors set forth under
Title 18 U.S. Code, 3553(a), including **especially the advisory sentenc-
ing guidelines** issued by the Sentencing Commission and the conduct
that was admitted by Mr. Wilson in the factual resume that he signed.

(ROA.175)(emphasis added). It further noted that the defendant received the benefit

of a statutory cap of ten years, and that, in its view, the Guidelines calculated without

respect to the statutory maximum well-exceeded that number. *See* (ROA.178). Nowhere did the court say during the live hearing that it would have imposed the same sentence under the same Guidelines. To the contrary, and as noted, it twice referenced the Guidelines in explaining the sentence. However, the Statement of Reasons concluded with the following recitation:

> Even if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.

(ROA.246).

### III.    Summary of Argument

**A.**    Through the PSR, *see* (ROA.199)(PSR, ¶24), the district court effectively found, *see* (ROA.163, 243), the factual predicate for a voluntary manslaughter offense, *see* 18 U.S.C. §1112. Yet it applied a cross-reference, *see* (ROA.199) (PSR, ¶24), to the attempted murder offense Guideline, USSG §2A1.2, rather than to the offense Guideline governing voluntary manslaughter, USSG §2A1.3. This transformed a Guideline range of 70-87 months imprisonment into a recommendation of 120 months. *See* USSG §§2A1.2, 2A1.3, USSG Ch. 5A; (ROA.210). Given the district court's emphasis (twice) on the Guidelines during its live explanation for the sentence, *see* (ROA.175, 178), there is at least a reasonable probability that the error affected the outcome. And because the defendant was effectively punished for a more culpable offense than the district court found him to have committed, the error merits discretionary remand.

**B.**     The district court rejected Appellant's Second Amendment challenge on two grounds, neither of which withstand scrutiny. First, the court said that Appellant could not sustain an as-applied challenge because he used the gun unlawfully. *See* (ROA.59). But *United States v. Diaz*, 116 F.4th 458, 462 (5th Cir. 2024), directs courts to evaluate on the scope of a statutory prohibition when adjudicating a Second Amendment challenge, ignoring conduct that the government need not prove to obtain a conviction. *See Diaz*, 116 F.4th at 467. Section 922(o) of Title 18 prohibits possession of a machinegun – the government need prove no unlawful use of this weapon, so the defendant's use of it does not affect his Second Amendment challenge.

Second, the district court said that *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), foreclosed any Second Amendment challenge to §922(o). *See* (ROA.60). But since *Hollis* the number of American machineguns, registered and unregistered, has vastly increased. *See* Bureau of Alcohol, Tobacco, and Firearms, *Firearms Commerce in the United States*, *2021 Annual Statistical Update*, p. 16 (2021), *available at https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download, last visited November 26, 2024*; *See* Bureau of Alcohol, Tobacco, and Firearms, *Fiscal Year 2024*, *Congressional Budget Submission*, at 14 (March 2023), *available at* [https://www.justice.gov/d9/2023-03/atf_fy_2024_pb_narrative_final_3-15-23_omb_cleared.pdf](https://www.justice.gov/d9/2023-03/atf_fy_2024_pb_narrative_final_3-15-23_omb_cleared.pdf)*, last visited November 26, 2024*. It can no longer be said that they are "unusual," and outside "common use."

*Hollis*, 827 F.3d at 451. They are accordingly no longer outside the protection of the Second Amendment.

## ARGUMENT AND AUTHORITIES

**I.    The district court plainly erred in applying a cross-reference to the second-degree murder Guideline. The PSR's factual recitation supported a cross-reference to the voluntary manslaughter Guideline.**

**A.    Standard of Review**

Unpreserved error may be reversed where there is: 1) error, 2) that is clear or obvious, 3) that affects substantial rights, and 4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings, meriting discretionary remand. *See United State v. Olano*, 507 U.S. 725, 732 (1993).

However, "[c]loser scrutiny" of an unpreserved error "may ... be appropriate when the failure to preserve the precise grounds for error is mitigated by an objection on related grounds." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991)(citing *United States v. Brown*, 555 F.2d 407, 420 (5th Cir.1977)), *abrogated on other grounds by Davis v. United States*, 589 U.S. 345 (2020). Here, the defense objected to the cross-reference on a related ground: that the victim's weapon-possession supported a claim of self-defense. *See* (ROA.215-216). This objection relates closely to the court's failure to apply

the voluntary manslaughter Guideline. Assuming that the victim's immediate posses-

sion of a weapon does not support a self-defense claim, it nonetheless added to the

defendant's fear, and lessened his self-control. It thus helps to support a claim of vol-

untary manslaughter. *See United States v. Branch*, 91 F.3d 699, 718–19 (5th Cir.

1996)("Some contend that a defendant who played a role in creating the confrontation

that led to a homicide may not escape culpability altogether but may nevertheless re-

duce his crime from murder to manslaughter."); *United States v. Browner*, 889 F.2d 549,

552 (5th Cir. 1989)(noting that a "crime of passion" may result from either "fear or

rage."). This Court should accordingly relax the standards of plain error review to

some extent.

**B.    Discussion**

**1.    The court erred**

Where death results from a defendant's gun possession, USSG §2K2.1 provides

a cross-reference to "the most analogous offense guideline from Chapter Two, Part A,

Subpart 1 (Homicide)..." USSG §2K2.1(c)(1)(B). Here, the PSR applied a cross-refer-

ence to USSG §2A1.2, the Guideline governing second-degree murder. But it also

made the following factual finding:

> The firearm containing the Glock switch possessed by the defendant was
> used in the murder of D.J. on May 9, 2023. When determining the ap-
> plicable guideline for the cross reference, the details of D.J.'s murder in-
> dicates a "crime of passion" in which the defendant acted against D.J.

because of a sudden strong impulse such as anger with minimal planning and within a short period of time.

(ROA.199)(PSR, ¶24).

Secon-degree murder is defined by 18 U.S.C. §1111 as murder lacking certain aggravating elements: "poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditate[ion]." Second-degree murder may also be elevated to first-degree murder by the concurrent commission of other serious offenses. 18 U.S.C. §1111. It is punished by §2A1.2 and carries a base offense level of 38.

But in language that closely resembles that of the PSR's factual finding, 18 U.S.C. §1112 defines the offense of voluntary manslaughter. It defines voluntary man-slaughter as homicide committed "[u]pon a sudden quarrel or heat of passion." *Compare* (ROA.199)(PSR, ¶24)("...the details of D.J.'s murder indicates a 'crime of passion' in which the defendant acted against D.J. because of a sudden strong impulse."). This offense is punished by USSG §2A1.3 and carries a base offense level of just 29, nine levels below that of second-degree murder.

"The fact that distinguishes manslaughter from murder is the existence of mal-ice." *United States v. Collins*, 690 F.2d 431, 437 (5th Cir. 1982)(citing *Stevenson v. United States*, 162 U.S. 313 (1896)). "In the case of voluntary manslaughter, the onset of a 'sudden passion' is deemed to demonstrate the absence of malice." *Collins*, 690 F.2d at 437 (citing *United States v. Elk*, 658 F.2d 644 (8th Cir. 1981)). "A killing in the heat

of passion occurs when 'the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force.'" *Frascarelli v. United States Parole Comm'n*, 857 F.3d 701, 707 (5th Cir. 2017)(quoting *Browner*, 889 F.2d at 552). The passion may be grounded in either "fear or rage." *Browner*, 889 F.2d at 552.

This language well-describes the facts as the PSR recites them. As the PSR recounted it, the victim cheated Appellant out of $300 by selling him a fake gun. *See* (ROA.196). As soon as he detected the fraud, Appellant returned on foot to his car, grabbed a magazine and confronted the victim – in other words, the fraud provoked a "sudden quarrel." *See* (ROA.197). The video shows that at that time, the victim possessed a gun on his person, although, as the government pointed out below, he apparently had tucked it under his armpit. *See* (Governments' Sentencing Exhibit 3); (ROA.237).

This homicide is well described as a "sudden quarrel," and as the result of "sudden passion." 18 U.S.C. §1112. Although no one would describe the sale of a fake gun as "justif[ication] for the use of deadly force," that is not necessary to reduce the offense to manslaughter. *Browner*, 889 F.2d at 552. Rather, the provocation need only be such as to cause a "passion" or "rage" in an ordinary person, assuming the defendant acts in the spell of such passion. *Id.* That is the case here, where the PSR recounts an

offense occurring almost immediately on the heels of the fraud. *See* (ROA.196-197). Notably, the defendant did not enter the transaction with a loaded firearm but had to retrieve the bullets, *see* (ROA.197), demonstrating that he had not intended to shoot the victim before the fraud occurred. And the victim's active possession of a firearm, if not sufficient to invoke self-defense, certainly added "fear" to the overall passion.

In any case, this Court's independent appraisal of the defendant's voluntary manslaughter claim is not the critical issue. Rather, Appellant is entitled to relief **because the PSR found** a "'crime of passion' in which the defendant acted ... because of a sudden strong impulse." (ROA.199)(PSR, ¶24). The district court explicitly adopted the PSR's factual findings. *See* (ROA.163, 243). As such, the district court effectively found that the defendant committed voluntary manslaughter, but overlooked the relevant Guideline, adding an erroneous nine levels to the base offense level.

**2.    The error was clear or obvious.**

The elements of voluntary manslaughter are perfectly well-settled by this Court's precedent. *See Collins*, 690 F.2d at 437; *Browner*, 889 F.2d at 552. Conceivably, a case may arise where reasonable people could disagree about the application of this standard to an individual case. Here, however, the PSR expressly found that the defendant acted due to a sudden strong impulse and committed a "crime of passion." (ROA.199)(PSR, ¶24). And the district court adopted this finding. *See* (ROA.163, 243).

Because this finding matches the definition of voluntary manslaughter recognized by this Court's precedent with only immaterial or trivial differences, and matches the statutory language, the error is clear or obvious. The relevant error, in other words, is simply the district court's failure to recognize the legal effect of its own factual findings. This error is obvious.

**3.     The error affected substantial rights.**

To obtain relief on plain error, the defendant must show a reasonable probability that the result would have been different in the absence of a court's mistake. *See United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Dominguez Benitez*, 542 U.S. at 83. Ordinarily, an error that alters the Guideline range will carry the defendant's burden of persuasion to show a reasonable probability of a different result. *See Molina-Martinez*, 578 U.S. at 201. This is because the recommendations of the Sentencing Commission play a central role in the federal sentencing process. *See id.* at 192-193.

Here, the final sentence of the written Statement of Reasons recites the following words:

> [e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.

(ROA.246). Sometimes such disclaimers defeat a claim for relief, in spite of Guideline error. *See United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012); *United States v. Redmond*, 965 F.3d 416, 420-421 (5th Cir. 2020); *United States v. Garcia*, 647 Fed. Appx. 408, 410 (5th Cir. 2016)(unpublished); *United States v. Thomas*, 793 Fed. Appx. 346, 347 (5th Cir. 2020)(unpublished); *United States. v. Rico*, 864 F.3d 381, 386-387 (5th Cir. 2017); *United States v. Reyna-Aragon*, 992 F.3d 381, 387-389 (5th Cir. 2021); *United States v. Castro-Alfonso*, 841 F.3d 292, 297–99 (5th Cir. 2016); *United States v. Kinzy*, 2023 WL 4763336, at *14 (5th Cir. 2023)(unpublished).

But "it is not enough for the district court to say the same sentence would have been imposed but for the error." *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir. 2017), *supplemented* 854 F.3d 284 (5th Cir. 2017)(citing *United States v. Bazemore*, 608 Fed. Appx. 207, 216 (5th Cir. 2015)(unpublished); *accord United States v. Redmond*, 965 F.3d 416, 421 (5th Cir. 2020). Thus, this Court has frequently – and recently, *see United States v. Ritchie*, 117 F.4th 762 (5th Cir. September 2024) ~ remanded for resentencing in spite of a district court's statement that the sentence would have been the same under different Guidelines. *See United States v. Walters*, No. 22-50774, 2024 WL 512555, at *2 (5th Cir. Feb. 9, 2024)(unpublished); *United States v. Taylor*, 2022 WL 2752602, at *2 (5th Cir. 2022)(unpublished); *United States v. Martinez-Romero*, 817 F.3d

917 (5th Cir. 2016); *United States v. Rico-Mejia*, 859 F.3d 318, 323-325 (5th Cir. 2017),

*abrogated on other grounds by United States v. Reyes-Contreras*, 882 F.3d 113 (5th Cir. 2018),

*abrogated by Borden v. United States*, 593 U.S. 420 (2021); *Tanksley*, 848 F.3d at 353;

*United States v. Cardenas*, 598 Fed. Appx 264, 269 (5th Cir. 2015)(unpublished); *United*

*States v. Vasquez-Tovar*, 420 F. Appx 383, 384 (5th Cir. 2011)(unpublished); *United States*

*v. Leal-Rax*, 594 Fed. Appx 844 (5th Cir. 2014)(unpublished), *abrogated on other grounds*

*by United States v. Reyes-Contreras, abrogated in turn by Borden, supra*; *Bazemore*, 608 Fed.

Appx at 216.

Here, there are five good reasons to discount the court's Guideline disclaimer.

<u>First</u>, and most importantly, the district court also said in live explanation of the sen-

tence that it was considering "**especially** the advisory sentencing guidelines issued by

the Sentencing Commission." (ROA.175)(emphasis added). Further, when the district

court explained the sentence to the defendant directly, and in immediate reaction to

the parties' arguments, it took care to tell the defendant that:

> your imprisonment range, without that ten-year cap, just under the guide-
> lines, would have been 188 to 235 months. Nonetheless, your sentence
> is capped at ten years.

(ROA.178). This statement would not have been true had the district court correctly

calculated the range, and it shows significant influence of the Guidelines in the sen-

tencing decision.

Similar statements – indeed, statements carrying more limited probative value – have been held to defeat a Guideline disclaimer. *See Tanksley*, 848 F.3d at 353 (remanding in spite of a Guideline disclaimer where the district court "pointed out that the sentence was at 'the bottom of the guidelines," and where the "Statement of Reasons indicates Tanksley was not sentenced 'outside the advisory guideline system' and that 'the Court considered the advisory guidelines.'").

<u>Second</u>, the court followed the Commission's recommendation in imposing sentence. The choice of a Guideline sentence tends to show that the Guidelines influenced the sentence imposed. *See Martinez-Romero*, 817 F.3d at 925-926 (finding that "the district court's selection of the bottom of the incorrect guideline range indicates that the improper guideline calculation influenced the sentence.").

<u>Third</u>, the court's disclaimer has every appearance of boilerplate. The court did not make any such statement live in the sentencing hearing itself. *See* (ROA.175). The parties thus had no chance to take issue with the disclaimer, nor ask any questions about it. And its absence from the courts' live explanation suggests that it did not occur to the court as it actually considered the case, but was at most an afterthought. Further, the Statement of Reasons does not explain what about the facts and circumstances of the case led the court to the 120-month outcome – it simply included one sentence disclaiming the Guidelines. *See* (ROA.246).

Indeed, the precise words used here – the same 21 words in the same sequence– appear in Statements of Reasons throughout at the district as a means to insulate sentences from Guideline appeal. *See United States v. Hott*, 866 F.3d 618, 622 (5th Cir. 2017)("'[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'"); *United States v. Garcia*, 647 Fed. Appx. 408, 410 (5th Cir. 2016)(unpublished)("Because the district court stated in its Statement of Reasons that '[e]ven if the guidelines calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553,' the Government has made the required showing."); *United States v. Montgomery*, 634 F. App'x 127, 131 (5th Cir. 2015)(unpublished)("Furthermore, the district court in this case stated that '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'"); *Tanksley*, 848 F.3d at 353 ("Here, the district court stated that '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'"); *United States v. Bravo*, 2021 WL 1561385 (5th Cir. Apr. 20, 2021)(unpublished)("In its Statement of Reasons, the district court also noted that, '[e]ven if the guideline calculations are not correct, this is the sentence the Court would otherwise impose under 18 U.S.C. § 3553.'"); *Bays v. United States*, No. 3:13-CR-357-B-1, 2023 WL 9183713, at

*8 (N.D. Tex. Dec. 20, 2023)(quoting district court's live sentencing explanation), *report and recommendation adopted*, No. 3:13-CR-00357-B-1, 2024 WL 102930 (N.D. Tex. Jan. 9, 2024)("Even if the guideline calculations are not correct, this is the sentence that the Court would otherwise impose under 3553."). This remarkable coincidence suggests that the language was not a natural or spontaneous reaction to the facts of the case, but is rather being "deployed as a talisman to insulate sentences that otherwise ought to be revisited by all participants." *Kinzy*, 2023 WL 4763336, at *14.

 <u>Fourth</u>, the Guideline error significantly impacted the range. In the absence of the error, the defendant would have had a final offense level of 26 (level 29, minus 3 levels), *see* USSG §§2A1.3, 3E1.1, and a criminal history category of II, *see* (ROA.210). This would have placed him in the range of 70-87 months imprisonment, *see* USSG Ch. 5A, significantly different from the 120-month recommendation actually applied, *see* (ROA.210), and a mere fraction of the 188-235-month range that the district court mentioned live at sentencing, *see* (ROA.178). Obviously, a Guideline error with substantial impact on the range is more likely to affect the outcome than a minor one.

 <u>Fifth</u>, the district court did not have occasion actually to consider the true range of 70-87 months imprisonment. As such, to credit the Guideline disclaimer in this case would require this Court to accept that the sentence would have been the same under **literally any Guidelines at all**. The central role of the Guidelines in federal

sentencing make this a disfavored conclusion. *See Molina-Martinez*, 578 U.S. at 192-193; *Gall v. United States*, 552 U.S. 38, 49 (2007); *Freeman v. United States*, 564 U.S. 522, 529 (2011)(plurality op.)(observing that "[i]n the usual sentencing, ... a "judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range."); *accord Peugh v. United States*, 569 U.S. 530, 542 (2013). Indeed, in the harmless error context, this Court has distinguished between those cases where the district court notes and considers the range ultimately vindicated on appeal and those in which it does not – the latter (like this one) are less likely to be affirmed. *See United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012); *United States v. Leontaritis*, 977 F.3d 447, 452 (5th Cir. 2020); *United States v. Nanda*, 867 F.3d 522, 531 (5th Cir. 2017); *United States. v. Rico*, 864 F.3d 381, 386-387, n.4 (5th Cir. 2017); *United States v. Reyna-Aragon*, 992 F.3d 381, 387 (5th Cir. 2021).

Taken together, the record – and especially the court's references to the Guidelines at the sentencing – shows at least a reasonable probability of a different result but for the error, if not proof by a preponderance of the evidence.

## 4. The error affected the fairness, integrity, and public reputation of judicial proceedings.

In the ordinary case, a Guideline error that affects the term of imprisonment will affect the fairness of proceedings and merit remand. *See Rosales-Mireles v. United*

19

*States*, 585 U.S. 129, 139-140 (2018). The defendant need not show that the error shocks the conscience, nor that it calls into question the integrity or competence of the district court, nor that it represents a miscarriage of justice. *See Rosales-Mireles*, 585 U.S. at 137-138. It is enough that a Guideline error cause erroneous prison time. *See id.* It has probably done so here.

Further, this case involves an error that caused the district court to overlook a basic and fundamental difference in criminal culpability – the absence of malice. The error did not deprive the defendant of the benefit of a mere technicality  but rather exposed him to a substantive overpunishment. *Cf. United States v. Cotton*, 535 U.S. 625 (2002). The punishment of a defendant for a crime more serious than the one the court found him to commit is a serious error and ought to be corrected.

## II.    The district court erred in entering conviction for a violation of 18 U.S.C. §922(o), which statute violates the Second Amendment as applied to the possession of machineguns.

### A.    Standard of Review

In the context of the Second Amendment, this Court will "review constitutional challenges to a statute de novo." *United States v. Diaz*, 116 F.4th 458, 462 (5th Cir. 2024)(citing *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003)). The defense preserved error with a pre-trial motion to dismiss on Second Amendment grounds. *See* (ROA.42-47).

**B.    Discussion**

**1.    Effect of the Plea**

Most challenges to a conviction are of course waived by a plea of guilty. *See United States v. Broce*, 488 U.S. 563 (1989). But defendants do not waive a constitutional challenge to the statute of conviction if the challenge does not require them to contradict allegations in the charging document. *See Class v. United States*, 583 U.S. 174, 183 (2018). The challenge raised herein accepts the allegations of the indictment and questions the power of Congress to prosecute the conduct.

**2.    The Merits**

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 17 (2022). The text of the Amendment— "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed," U.S. Const., amend. II—"'guarantee[s] the individual right to possess and carry weapons in case of confrontation' that does not depend on service in the militia." *Bruen*, 597 at 20 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

Appellant's statute of conviction criminalizes the simple possession of a machinegun, provided the defendant did not possess it before the statute's effective date. *See* 18 U.S.C. §922(o). By its terms, it forbids citizens to "keep...Arms" and would seem therefore to contradict the plain meaning of the Second Amendment.

The court below, however, held that Appellant could not raise a successful as-applied challenge to the statute because Appellant had misused the machinegun. *See* (ROA.59). Of course, no one would question the constitutionality of a statute forbidding the use of firearms in a homicide. But authority issued after the district court's opinion shows that this is not the correct methodology for analyzing an as-applied challenge.

In *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), this Court addressed an as-applied challenge to 18 U.S.C. §922(g)(1), which forbids the possession of firearms by felons. The government argued that Diaz's prior misdemeanor conviction for drug dealing, and his prior unadjudicated acts of drug trafficking, showed his danger to the community. *See Diaz*, 116 F.4th at 467. It thus argued that the §922(g)(1) satisfied constitutional requirements as applied to a person with Diaz's criminal history. *See id.* This Court, however, held that conduct outside the elements of the challenged statute did not bear on its constitutionality, even as applied to the defendant. *See id.* It held that:

> [f]or the purposes of assessing Diaz's predicate offenses under § 922(g)(1), we may consider prior convictions that are "punishable by

imprisonment for a term exceeding one year." See § 922(g)(1). Diaz's pertinent criminal history consists of vehicle theft, evading arrest, and possessing a firearm as a felon. Both he and the government discuss various drug offenses in their briefing on his as-applied challenge, but those are not relevant for our purposes. In 2018 and 2020, Diaz was charged with possession of a controlled substance and possession with intent to deliver a controlled substance, but those charges were dismissed. He was convicted in state court of possession of less than two ounces of marijuana, but that is not a felony punishable by more than one year, as required by § 922(g)(1). And count one of the conviction that Diaz appeals here (possession with intent to distribute) cannot serve as a predicate for his § 922(g)(1) charge in the same indictment; that charge must instead rely on previous history. Thus, **the only relevant criminal convictions for our purposes** are car theft, evading arrest, and possessing a firearm as a felon. To survive Diaz's as-applied challenge, **the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this**.

*Id.* (emphasis added).

In *Diaz*, this Court limited the government to conduct giving rise to liability under §922(g)(1) as it addressed the defendant's Second Amendment challenge. Thus, this Court evaluated only what the government had to prove to secure conviction under §922(g)(1): the defendant's prior felony convictions, rather than his misdemeanors or unadjudicated conduct. Here, similarly, the district court erred in considering the defendant's alleged use of the gun to commit an act of violence. It should have instead asked whether the constitution permits the government to ban the possession of a machinegun, which is the limit of the statutory prohibition at issue.

The district court also cited this Court's decision in *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016), which found that machineguns are unusual weapons outside the scope of Second Amendment protection. *See* (ROA.59-61). In *Heller*, the Supreme Court recognized a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" and thus limited Second Amendment protection to those weapons "'in common use at the time'" of the challenge. *Heller*, 554 U.S. at 627 (citing 4 W. Blackstone, *Commentaries on the Laws of England* 148–149 (1769), and quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). This Court in *Hollis* held that machineguns are "unusual" and not "in common use." *Hollis*, 827 F.3d at 451. In support, it cited "an ATF report ... indicat[ing] that there are 175,977 pre–1986 civilian-owned machineguns in existence." *Id.* at 449.

For a variety of reasons, 175,000 is no longer a reasonable estimate of the number of machineguns in the country. Updated statistics suggest that they are considerably more prevalent, and, for better or worse, not at all "unusual." The short time since *Hollis* has seen an explosion in the number of machineguns, both registered and unregistered. As early as 2021, the ATF reports showed 741,146 registered machineguns throughout the United States. *See* Bureau of Alcohol, Tobacco, and Firearms, *Firearms Commerce in the United States, 2021 Annual Statistical Update*, p. 16 (2021), *available at*

https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download, *last visited November 26, 2024*. Extrapolating the trendline another three years suggests a much larger number.

And these are the **registered** machineguns. The ATF seizes from criminal activity another 3,000 or so machineguns every year without any serial numbers, a number that surely reflects a mere fraction of those in circulation. *See* Bureau of Alcohol, Tobacco, and Firearms, *Fiscal Year 2024, Congressional Budget Submission*, at 14 (March 2023), *available at* https://www.justice.gov/d9/2023-03/atf_fy_2024_pb_narrative_final_3-15-23_omb_cleared.pdf, *last visited November 26, 2024*. And new "conversion devices" – such as Appellant's – have fueled a massive growth in new firearms that meet the definition of a "machinegun," and which did not exist at §922(o)'s effective date. *See id.* at 13.

Machineguns now likely number in the millions. *Heller* and *Hollis* evaluate whether a banned "Arm" is "dangerous and unusual." *Heller*, 554 U.S. at 627; *Hollis v. Lynch*, 827 F.3d 436, 451. The one at issue here is no longer unusual.

In any case, the original meaning of the Second Amendment does not permit any prohibition on the simple possession of bearable arms, unusual or otherwise. At and around Founding, the country had no tradition of prohibiting especially dangerous weapons. A New Jersey law punished those who did not safely store their weapons,

but did not prohibit them. *See* 1771 N.J. Laws 346, An Act For The Preservation Of Deer And Other Game, And To Prevent Trespassing With Guns, § 10, *as reproduced in* Mark Frassetto, *Firearms and Weapons Legislation up to the Early 20th Century* (January 15, 2013), *available at* https://ssrn.com/abstract=2200991 or http://dx.doi.org/10.2139/ssrn.2200991, *last visited December 4, 2024.* An East Jersey law of 1689 forbade carrying unusual weapons, but not their bare possession. *See Bruen*, 142 S.Ct. at 2143-2144 (discussing this law). Laws prohibiting or regulating especially dangerous weapons did not become prominent until around the 1830's, after the death of the Founding generation. *See* An Act to Suppress the Use of Bowie Knives: Section 2. June 30, 1837; Mass. Gen. Law (1850), chap. 194 §§ 1, 2 as codified in Mass. Gen. Stat., chap. 164 (1873) § 11. Those laws don't tell us much about what the people who voted for the Second Amendment thought it meant.

Because the statute is consistent with neither the text nor the meaning of the Second Amendment as it was understood at Founding, its enforcement violates Appellant's Second Amendment rights.

## Conclusion

Appellant asks this Court to vacate the district court's judgment and remand for further proceedings.

Respectfully submitted,

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

/s/ Kevin Joel Page
KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Mr. Wilson*

## Certificate of Service

On December 5, 2024 I filed this Brief through the Court's ECF system. Opposing Counsel has therefore been served. I also sent a separate copy by email to AUSA Stephen Gilstrap.

/s/ Kevin Joel Page

## Certificate of Compliance

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains 5,709 words excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii). The brief was prepared using MS Word, Goudy Old Style 14-point font, with footnotes in 12-point font.

/s/ Kevin Joel Page