IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 24-10633

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE,*

V.

JAMAION WILSON,
*DEFENDANT-APPELLANT.*

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

## REPLY BRIEF

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Mr. Wilson*

## Certificate of Interested Persons for
### *United States v. Jamaion Wilson,* Case No. 24-10633

    The undersigned certifies that the following persons have an interest in this case, to help the judges evaluate possible grounds for disqualification or recusal.

| | |
|---|---|
| Appellant: | Jamaion Wilson |
| Federal Public Defender: | Jason Hawkins |
| Assistant Federal Public Defenders: | John J. Stickney (Trial)<br>Kevin Joel Page (Appeal) |
| United States Attorneys: | Leigha Simonton<br>Chad Meachum (Acting) |
| Assistant United States Attorneys: | Frank L. Gatto (Trial)<br>Lindsey Pryor (Appeal) |
| Magistrate Judge: | Hon. Hal. R. Ray |
| District Judge: | Hon. Mark Pittman |

/s/ Kevin Joel Page
Counsel for Appellant

## Table of Contents

Certificate of Interested Persons..................................................................................i

Table of Authorities ....................................................................................................iii

Argument .......................................................................................................................1

     I.     The district court plainly erred in applying a cross-reference to the second-degree murder Guideline. The PSR's factual recitation supported a cross-reference to the voluntary manslaughter Guideline.......1

     II.    The district court erred in entering conviction for a violation of 18 U.S.C. §922(o), which statute violates the Second Amendment as applied to the possession of machineguns.............9

Conclusion ................................................................................................................... 11

Certificate of Service.................................................................................................. 12

Certificate of Compliance ......................................................................................... 12

## Table of Authorities

Page(s)

**Federal Cases**

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .................................................................................. 9, 10

*Hollis v. Lynch*,
  827 F.3d 436 (5th Cir. 2016) ..................................................................... 9, 10

*Lara v. United States Parole Comm'n*,
  990 F.2d 839 (5th Cir. 1993) ............................................................................ 4

*Molina-Martinez v. United States*,
  578 U.S. 189 (2016) ......................................................................................... 6

*Rosales-Mireles v. United States*,
  585 U.S. 129 (2018) ......................................................................................... 8

*United States v. Branch*,
  91 F.3d 699 (5th Cir. 1996) ............................................................................. 2

*United States v. Browner*,
  889 F.2d 549 (5th Cir. 1989) ............................................................................ 3

*United States v. Collins*,
  690 F.2d 431 (5th Cir. 1982) ............................................................................ 4

*United States v. Dominguez-Benitez*,
  542 U.S. 74 (2004) ........................................................................................... 6

*United States v. Giglio*,
  126 F.4th 1039 (5th Cir. 2025) ........................................................................ 5

*United States v. Kinzy*,
  2023 WL 4763336 (5th Cir. 2024)(unpublished) ...................................... 7

*United States v. Lopez*,
  923 F.2d 47 (5th Cir. 1991) .............................................................................. 2

*United States v. Miller*,
    307 U.S. 174 (1939) .................................................................................. 9

*United States v. Solano-Hernandez*,
    761 F. App'x 276 (5th Cir. 2019) ............................................................. 8

*United States v. Tanksley*,
    848 F.3d 347 (5th Cir. 2017) .................................................................. 7

*United States v. Tanksley*,
    854 F.3d 284 (5th Cir. 2017) .................................................................. 7

*United States v. Walter*,
    775 F. App'x 25 (2d Cir. 2019) ............................................................... 4

**Federal Statutes**

18 U.S.C. § 922(o) ........................................................................................ 9

18 U.S.C. § 1112 ..................................................................................... 1, 4

USSG Chapter 5A ........................................................................................ 1

USSG § 2A1.2 ............................................................................................... 1

USSG § 2A1.3 ........................................................................................... 1, 8

**State Statutes**

Tex. Penal Code § 12.32 ............................................................................. 8

Tex. Penal Code § 19.02(c)(d) .................................................................... 8

**Constitutional Provisions**

U.S. Const. amend. II .................................................................................. 9

**Other Authorities**

Bureau of Alcohol, Tobacco, and Firearms, *Firearms Commerce in the
    United States, 2021 Annual Statistic Update*, p. 16 (2021) ...................... 10

4 W. Blackstone, *Commentaries on the Laws of England* 148–149 (1769) ...................... 9

# ARGUMENT

**I.     The district court plainly erred in applying a cross-reference to the second-degree murder Guideline. The PSR's factual recitation supported a cross-reference to the voluntary manslaughter Guideline.**

**1.     Summary – this Court should vacate the sentence.**

The PSR found that the defendant committed "a 'crime of passion'" borne "of a sudden strong impulse." (ROA.199)(PSR, ¶24). The district court expressly adopted this finding, *see* (ROA.163, 243), but committed clear and obvious error when it overlooked the finding's legal consequence. A finding that homicide occurred "[u]pon a sudden quarrel or heat of passion" transforms murder into voluntary manslaughter. 18 U.S.C. §1112. The district court therefore erred in applying a cross-reference to a Guideline governing murder, USSG §2A1.2, rather than to the voluntary manslaughter Guideline, USSG §2A1.3.

This error transformed a Guideline range of 70-87 months imprisonment, *see* (ROA.210); USSG Ch. 5A, into a Guideline recommendation of 120 months, *see* (ROA.210). Given the court's statements at sentencing – its plain statement that it considered the Guidelines "especially" in fashioning the sentence, (ROA.175), and its explanation of the sentence by reference to the Guideline range that would have applied but for the statutory maximum, *see* (ROA.178) – there is a very good chance that the Guidelines affected the sentence imposed. The moment of the error, both in terms

1

of the Guideline range and the substantive issue involved (murder or not), means that the error affected the fairness of proceedings and should be vacated.

**2.   The standard of review is a relaxed form of plain error.**

Appellant concedes that plain error applies to his Guideline claim. But this Court has stated in a published opinion that "[c]loser scrutiny" of an unpreserved error on plain error review "may ... be appropriate when the failure to preserve the precise grounds for error is mitigated by an objection on related grounds." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991)(citing *United States v. Brown*, 555 F.2d 407, 420 (5th Cir.1977)), *abrogated on other grounds by Davis v. United States*, 589 U.S. 345 (2020). In response, the government reiterates that review is for plain error, which is not contested, but makes no effort to address the distinction made in *Lopez* between ordinary and relaxed plain error review. Rather, it simply pretends that the statement made in *Lopez* does not exist. *See* (Appellee's Brief, at 8, n.3).

Certainly, the government is correct in asserting that the objection below "did not alert the district court to his argument that his conduct constituted only voluntary manslaughter," (Appellee's Brief, at 8, n.3), so as to preserve plenary review. But that objection (self-defense) and the claim on appeal (voluntary manslaughter provoked by sudden quarrel) are nonetheless closely related. Caselaw recognizes the relationship. *See United States v. Branch*, 91 F.3d 699, 718–19 (5th Cir. 1996)("Some contend that a

2

defendant who played a role in creating the confrontation that led to a homicide may not escape culpability altogether but may nevertheless reduce his crime from murder to manslaughter."); *United States v. Browner*, 889 F.2d 549, 552 (5th Cir. 1989)(noting that a "crime of passion" may result from either "fear or rage."). And the question presented on appeal follows sequentially after consideration of the objection. A district court that rejects a claim of self-defense may be naturally impelled to ask whether the pressures at issue nonetheless give rise to a claim of voluntary manslaughter.

The difference is admittedly subtle. In any case, however, Appellant's claim for relief should succeed under ordinary plain error, as shown below.

**3.    The district court clearly erred in failing to accord its factual finding the appropriate legal significance for the Guideline calculations.**

At length, the government argues that the facts of this case would not support a finding of involuntary manslaughter. *See* (Appellee's Brief, at10-11)(citing *United States v. Hicks*, 389 F.3d at 529; *United States v. White*, No. 23-10194, 2024 WL 4987350, at *5 (5th Cir. Dec. 5, 2024); *United States v. Bell*, No. 23-50168, 2023 WL 7549508, at *1 (5th Cir. Nov. 13, 2023); *United States v. Munoz*, 523 F. App'x 278, 278 (5th Cir. 2013); *United States v. Caston*, 851 F. App'x 557, 564 (6th Cir. 2021) (unpublished); *Winfield v. Dorethy*, 956 F.3d 442, 457 (7th Cir. 2020). That's not con-

3

tested. Rather, the district court plainly erred in failing to apply the *voluntary* manslaughter Guideline, given its factual finding of sudden passion. A defendant need not act recklessly to avail himself of the voluntary manslaughter Guideline.

The government also contends that the PSR implicitly found all facts necessary to the second-degree murder enhancement. *See* (Appellee's Brief, at 12-13). The problem, however, is not what the PSR (and the district court, which adopted the PSR) failed to find, but the legal effect of what it actually *did* find. The PSR found that the defendant committed "a 'crime of passion' in which the defendant acted against D.J. because of a sudden strong impulse." (ROA.199)(PSR, ¶24). The court adopted that finding. *See* (ROA.163, 243). The government says that this finding is "legally meaningless." (Appellee's Brief, at 15-16). Yet it cannot identify a meaningful difference between this phrase and the predicate for a voluntary manslaughter reduction, a crime committed "[u]pon a sudden quarrel or heat of passion." 18 U.S.C. §1112.

Finally, the government cites several cases to show that the underlying facts would support a finding of murder rather than voluntary manslaughter. *See United States v. Collins*, 690 F.2d 431, 437 (5th Cir. 1982); *Lara v. United States Parole Comm'n*, 990 F.2d 839, 841 (5th Cir. 1993); *United States v. Walter*, 775 F. App'x 25, 27-28 (2d Cir. 2019). Perhaps the district court might well have found no "sudden quarrel" or "heat of passion" here. It erred, however, in adopting an explicit factual finding that

4

defendant committed "a crime of passion," and then failing to accord that finding its legal consequence.

## 4. The error affected substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

The government contends that the sentence would have been the same even if the court had applied the voluntary manslaughter Guideline, seizing on a boilerplate Guideline disclaimer found in the Statement of Reasons. *See* (Appellee's Brief, at 17-18). This Court sometimes credits such disclaimers, and sometimes disregards them. *See* (Initial Brief, at 14-15)(collecting cases). As it recently observed, the prejudice attendant to a Guideline error is not a "magic words" requirement, and "[a] court's mere recitation that it would impose the same sentence is neither necessary nor sufficient." *United States v. Giglio*, 126 F.4th 1039, 1047 (5th Cir. 2025)(citing *United States v. Vega-Garcia*, 893 F.3d 326, 328 (5th Cir. 2018); *United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir. 2017)).

And here the government provides no good reason to credit the disclaimer. It does note the absence of preservation and the fact that the sentence falls at the statutory maximum, *see* (Appellee's Brief, at 17-18), but neither of these carry the day for it. The absence of preservation switches the burden of persuasion on the substantial

5

rights issue, but it requires the defendant to show no more than a reasonable probability of a different result, a standard less demanding even than a preponderance of the evidence. *See United States v. Dominguez-Benitez*, 542 U.S. 74, 83, n.9 (2004). In most cases, the mere statistical tendency of the Guidelines to affect federal sentences carries that burden. *See Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016). And here, there is also a direct statement by the district court that it considered the Guidelines "especially." (ROA.175). Further, there is an explanation for the sentence that directly references the Guideline range: the court told the defendant that his Guideline range would have well-exceeded the sentence imposed but for the statutory maximum. *See* (ROA.178). This shows that the Guidelines figured in the court's thinking.

The statutory maximum might have more probative value were the nature of the Guideline error more technical and less closely related to the defendant's moral blameworthiness. A district court is very likely to give the statutory maximum to a person guilty of **murder**. That choice doesn't say very much about the court's willingness to give the same sentence to one guilty of a less serious offense. The probative value of the statutory maximum, moreover, is blunted by the fact that the statutory maximum *was* the Guideline sentence. *See* (ROA.210). In any case, the district court's choice of the statutory maximum was not wholly divorced from the Guideline range,

6

as its comments show. Explaining the sentence, the court admonished that the defendant's Guidelines exceeded the statutory maximum, and that he was, in a sense, lucky to have a ten-year cap. *See* (ROA.178). That wouldn't have been true had the court calculated the Guidelines correctly; if it had applied the voluntary manslaughter Guideline, the range would have been 70-87 months, well below the maximum.

Ultimately, the government ignores an overwhelming case that the Guidelines likely affected the sentence. As noted, the court's live explanation for the sentence, *see* (ROA.175, 178), twice conflicted with its later statement, *see* (ROA.246), that the Guidelines didn't matter. Conflict between a court's explanation for the sentence and its Guideline disclaimer has been resolved in favor of vacatur. *See United States v. Tanksley*, 848 F.3d 347, 353 (5th Cir. 2017), *supplemented* 854 F.3d 284 (5th Cir. 2017)(citing *United States v. Bazemore*, 608 Fed. Appx. 207, 216 (5th Cir. 2015)(unpublished)).

Further, the government cannot identify a single case in which the Judge below imposed sentence and omitted the statement it made here. There may be one, but putting supervised release revocations, they certainly don't seem to be very frequent, if they exist at all. The frequency of these disclaimers reduces their probative value. *See United States v. Kinzy*, 2023 WL 4763336, at *14 (5th Cir. 2024)(unpublished)(Guideline disclaimers should not be "deployed as a talisman to insulate sentences that otherwise ought to be revisited by all participants.").

7

Finally, the nature of the Guideline error strongly weighs in favor of relief on both the third and fourth prongs. The district court sentenced the defendant as though he had committed murder, even after finding, effectively, that the facts represented only voluntary manslaughter. The difference between murder and voluntary manslaughter can be the difference between life and death in an appropriate case. *See e.g.* Tex. Penal Code §§12.32, 19.02(c)(d). Here, the government contends that this difference would not even have been worth a few months imprisonment.

Arguing against relief on the fourth prong, the government emphasizes that Appellant committed an intentional homicide. *See* (Appellee's Brief, at 18). The correct Guideline range takes that into account, and recommends a significantly higher sentence on this basis. *See* USSG §2A1.3. What affects the fairness of the proceedings is not that Appellant will receive a severe sentence, but that he is to be punished for a murder when the court found, effectively, that he was guilty of something less than that. A sentence at the statutory maximum might have been a reasonable outcome, but the fourth prong is not satisfied by every substantively reasonable sentence. *See United States v. Solano-Hernandez*, 761 F. App'x 276, 283 (5th Cir. 2019)("…the ultimate reasonableness of a sentence imposed based on an erroneous Guidelines range is immaterial because substantive reasonableness is a 'separate inquiry from whether an error warrants correction under plain-error review.'")(quoting *Rosales-Mireles v. United*

8

*States*, 585 U.S. 129 (2018)). Rather, the fourth prong inquiry looks at the error, not the outcome, and here the error is a matter of considerable moral and legal significance.

**II.    The district court erred in entering conviction for a violation of 18 U.S.C. §922(o), which statute violates the Second Amendment as applied to the possession of machineguns.**

*District of Columbia v. Heller*, 554 U.S. 570 (2008), provides Second Amendment protection for those weapons "'in common use at the time'" of the challenge. *Heller*, 554 U.S. at 627 (citing 4 W. Blackstone, *Commentaries on the Laws of England* 148–149 (1769), and quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016), applied this test to machineguns, and found that they were not "in common use" because there were "175,977 pre-1986 civilian-owned machineguns in existence." *Hollis*, 827 F.3d at 449. More recent statistics issued by the same agency show a number many times greater than that. So applying the controlling standard found in *Heller* and *Hollis* produces a different result.

The government's brief, admirably thorough though it may be, simply can't change this basic and straightforward reality. It argues first that *Hollis* forecloses the claim. *See* (Appellee's Brief, at 19-22). *Hollis*, however, does not simply hold that machineguns are unprotected by the Second Amendment. It holds that machineguns lack Second Amendment protection at least in part ***because*** they are not in common use,

9

evaluating the numbers of the weapons in circulation to determine as much. *See Hollis*, 827 F.3d at 449. A holding of this kind – unlike, say, a holding on the authority of the government to ban felon possession of firearms -- cannot logically survive a radical change in the numbers that determined the outcome.

The government reiterates its authority to regulate dangerous and unusual weapons, notes that most states ban machinegun, and identifies the dangers of machinegun possession. *See* (Appellee's Brief, at 22-25, 27-35). Taking this at face value, however, it does not change either the controlling standard of *Heller* and *Hollis*, and does not reduce the numbers of machineguns actually in circulation.

Finally, the government contends that the number of machineguns are small. *See* (Appellee's Brief, at 25-27). But it's using the outdated 175,000 figure from the 2016 ATF, *see* (Appellee's Brief, at 25-27), ignoring the 2021 ATF report finding that the registered number is actually three-quarters of a million, *see* Bureau of Alcohol, Tobacco, and Firearms, *Firearms Commerce in the United States, 2021 Annual Statistical Update*, p. 16 (2021), *available at https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download, last visited February 26, 2025*, and further ignoring what is likely a large reservoir of unregistered weapons, as evidenced by the yearly seizure of 3,000 guns with no serial numbers. The government points at several barriers to machinegun acquisition, *see* (Appellee's Brief, at 25-27), and it is surely correct that they

10

are more difficult to acquire than the average handgun. Nonetheless, the ATF's numbers speak for themselves. For better or worse, machineguns are no longer uncommon in America.

## Conclusion

Appellant asks this Court to vacate the district court's judgment and remand for further proceedings.

Respectfully submitted,

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

<u>/s/ Kevin Joel Page</u>
KEVIN JOEL PAGE
ASSISTANT FEDERAL PUBLIC DEFENDER
525 South Griffin
Suite 629
Dallas, Texas 75202
(214) 767-2746

*Counsel for Mr. Wilson*

**Certificate of Service**

On February 26, 2025, I filed this Brief through the Court's ECF system. Opposing Counsel has therefore been served. I also sent a separate copy by email to AUSA Lindsey Pryor.

/s/ Kevin Joel Page

**Certificate of Compliance**

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because it contains 2,402 words excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii). The brief was prepared using MS Word, Goudy Old Style 14-point font, with footnotes in 12-point font.

/s/ Kevin Joel Page